No. 15-13114-G

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**PJ United, Inc.; PJ Cheese, Inc.; and Douglas Stephen,**
**Appellants**

vs.

**James Sullivan,**
**Appellee**

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

---

## PRINCIPAL BRIEF OF PJ UNITED, INC., PJ CHEESE, INC., AND
## DOUGLAS STEPHENS

---

William K. Hancock
Galloway, Scott, Moss & Hancock, LLC
2200 Woodcrest Place, Suite 310
Birmingham, AL 35209
(205) 949-5580
Will.Hancock@GallowayScott.com

## Certificate of Interested Parties

PJ United, Inc., PJ Cheese, Inc., and Douglas Stephens certify that the following persons or corporate entities have an interest in the outcome of this appeal.

1. Taylor C. Bartlett
2. William L. Bross
3. Jack Clarke
4. The Honorable L. Scott Coogler
5. Galloway, Scott, Moss & Hancock, LLC
6. W. Lewis Garrison, Jr.
7. William K. Hancock
8. Heninger Garrison Davis, LLC
9. Jack McInnes
10. Paul McInnes LLP
11. PJ United, Inc.
12. PJ Cheese, Inc.
13. Mark Potashnick
14. Brandy Robertson
15. Douglas Stephens
16. James Sullivan
17. Weinhaus & Potashnick

i

## Corporate Disclosure Statement

PJ United, Inc. and PJ Cheese, Inc. disclose that PJ Cheese, Inc. is privately held by PJ United, Inc., that PJ United, Inc. is not a publicly traded company, and that no publicly traded entity owns any of PJ United's stock.

## Statement Regarding Oral Argument

The outcome of this appeal must be resolved by the simple application of a prior panel decision of this Court to the undisputed facts presented herein. Oral argument is not requested as it should not affect the outcome of this appeal.

## **Table of Contents**

Table of Citations ............................................................... 3

Jurisdiction Statement ......................................................... 5

Statement of the Issues ....................................................... 6

Statement Regarding Oral Argument ...................................... ii

Statement of the Case .......................................................... 7

    1.    Sullivan Filed Suit in the District Court, and Arbitration Ensued..........7

    2.    Sullivan Filed Unfair Labor Practice Charges. ............................. 8

    3.    The Board Issued a Decision Adopting the ALJ Decision, and PJ Cheese Petitioned the Fifth Circuit for Review of that Decision. .................. 9

    4.    Appellants Sought Vacatur of the Interim Award. .......................... 10

Statement of Facts .............................................................. 11

    1.    Sullivan Agreed To Arbitrate on a Single-Claimant Basis. ............... 11

    2.    The Arbitrator Issued the Interim Order. ................................... 12

    3.    The District Court Found the Arbitrator had Analyzed the Agreement Under His Interpretation of Applicable Law, and Not With Regard to the Parties' Contractual Intentions and Expectations.......................... 14

Standard of Review ............................................................. 17

Summary of the Argument ..................................................... 17

1

Argument .................................................................................. 19

I.     The Waiver Must be Enforced Under Prior Panel Precedent. .............. 19

II.    An Arbitrator Performs Only Two Functions: Interpreting the Contract (if Asked); and Enforcing the Contract in a Manner Consistent with the Parties' Intent. ...................................................................... 22

    A.    The Parties' Express Agreement to the Collective Action Waiver Rendered Interpretation of that Waiver Outside the Arbitrator's Assigned Task. ................................................................ 25

    B.    The Arbitrator Exceeded his Authority by Failing to Enforce the Clear and Mutual Collective Action Waiver. .................................. 26

    C.    The District Court Clearly Erred in Making Factual Findings, Failing to Vacate the Interim Award, and Failing to Order Arbitration to Proceed on a Single-Claimant Basis. ................................................. 27

    D.    "Excising" the Collective Action Waiver Would Result in no Agreement with Regard to Collective Arbitration, thereby Precluding Collective Arbitration as a Matter of Law. ............................................. 28

III.   The FAA Trumps Alabama Contract Law. ..................................... 28

IV.   The Agreement Required the Arbitrator to Enforce the Waiver if there is Any Reasonable Way to do so. ................................................ 31

Conclusion ................................................................................ 32

Certification of Length ................................................................. 33

Certificate of Service ................................................................. 34

## **Table of Citations**

Cases

*AT&T Mobility LLC v. Concepcion*, 536 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). ……………………………………………………………….... 28-31

*D. R. Horton, Inc.,* 357 NLRB No. 184 ……………………………………… 9, 10

*\*D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013) ………………….. 10

*Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313 (11th Cir. 2010) …………. 17

*Murphy Oil USA, Inc. v. NLRB*, 361 NLRB No. 72 (2014).  …………………… 10

*Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1234 (11th Cir. 2012).  ………….. 31

*PJ Cheese, Inc. and James Sullivan*, 362 NLRB No. 177. ………………………. 9

*\*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ……………………………........................... 22-25

*United States v. Vega–Castillo,* 540 F.3d 1235 (11th Cir. 2008). ………….. 17, 21

*\*Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir.), *cert. denied*, 134 S. Ct. 2886, 189 L. Ed. 2d 836 (2014). ……………………… 19, 20

Statutes

9 U.S.C. § 4. ………………………………………………………………….. 17

\*9 U.S.C. § 10(a)(4) ………………………………………………………….. 10

9 U.S.C. § 16(a)(3) ……………………………………………………………. 5

29 U.S.C. § 201, *et seq.* ………………………………………………………. 5

## Jurisdiction Statement

This appeal is taken pursuant to Section 16(a)(3) the Federal Arbitration Act, 29 U.S.C. § 16(a)(3), from the district court's denial of an application to vacate an arbitrator's Interim Order in a proceeding involving a claim for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (the "FLSA"). The FLSA provides this Court with subject-matter jurisdiction, and as previously addressed in response to this Court's jurisdiction question, the district court's order is final and ripe for review pursuant to the FAA, binding precedent of the United States Supreme Court, and a panel decision of this Court because the district court's order effectively subjects Appellants to collective class determination proceedings by an arbitrator who lacks the authority to conduct such proceedings. The district court entered its order denying the application to vacate the arbitrator's Interim Order on June 29, 2015, and Appellants filed their notice of appeal on July 14, 2015.

## Statement of the Issues

1. Whether an arbitrator who has not been asked to interpret the parties' intent with respect an undisputed collective action waiver contained in an employment arbitration agreement exceeds his authority by (i) refusing to enforce the undisputed waiver, (ii) striking the waiver from the agreement, and (iii) and ordering collective arbitration without finding any contractual basis for an agreement between the parties to arbitrate collectively.

2. Whether an arbitrator exceeds his authority when he fails to enforce an agreement that is enforceable under the Federal Arbitration Act where there is no overriding congressional command.

3. Whether an arbitrator exceeds his authority in refusing to enforce a collective action waiver where an arbitration agreement requires him to enforce the waiver if there is a reasonable basis to do so and where there is a reasonable basis to do so.

**Statement of the Case**

1. <u>Sullivan Filed Suit in the District Court, and Arbitration Ensued.</u>

Sullivan originally filed suit against PJ United, Inc. ("PJ United") and Douglas Stephens in his limited capacity as president of PJ United on July 9, 2013 in the United Stated District Court for the Northern District of Alabama. (Doc. 1).[1] Sullivan claimed that PJ United and Stephens employed him but failed to properly compensate him under the FLSA. Sullivan made no claim against PJ Cheese, Inc. ("PJ Cheese"), which is wholly owned by PJ United. Sullivan brought his lawsuit as a putative collective action under 29 U.S.C. Section 206(b).

On July 17, 2013, PJ United and Stephens, along with PJ Cheese, filed an arbitration demand with the American Arbitration Association ("AAA") in which they demanded that Sullivan arbitrate his claims against PJ United and Stephens on a single-claimant basis. A copy of the arbitration demand is attached to Doc. 25 as Exhibit 1. On the same day, PJ United and Stephens filed a motion to stay the trial of the civil action and to order that arbitration be had *in the manner provided for in an arbitration contract, i.e., on single-claimant basis.* (Doc. 10).

In response to PJ United and Stephens' motion, Sullivan conceded that his claim should be arbitrated, but asserted that the collective action waiver in his arbitration agreement violated the National Labor Relations Act (the "NLRA") and

---

[1] Documents filed in that civil action, 7:13-CV-1275-LSC, will be referred to as "Doc. ___."

7

***should not be enforced***. (Doc. 14, pp. 2-3). The district court granted the motion

to compel arbitration, but declined Appellants' request that the arbitration proceed

on a single claimant basis:

> ***[I]nterpretation*** of the collective action waiver provision is a question
> for the arbitrator. … In making its decision, the Court is not casting
> doubt on the validity of the collective action waiver provision.
> Instead, it is merely determining that arbitration is the appropriate
> forum ***to enforce*** that provision. … Thus, the waiver provision should
> be interpreted by the arbitrator.

(Doc. 21, p. 2-6; Doc. 22) (emphasis added).

2. Sullivan Filed Unfair Labor Practice Charges.

After the district court entered its order on the motion to stay and compel

arbitration, Sullivan filed a series of unfair labor practice charges ("ULPs") with

the National Labor Relations Board ("the Board") in which he alleged, under oath:

> [PJ United], by its officers, agents and representatives, since about
> July 17, 2013, has interfered with, restrained, and coerced its
> employees in the in the exercise of their rights guaranteed by Section
> 7 of [the NLRA], as amended, by acts and conduct including (1)
> maintaining a policy requiring all lawsuits brought by employees be
> brought individually only, and not as a group, class or otherwise
> concertedly with other employees, and (2) seeking to enforce that
> policy through a motion to stay and a response to an attempt to show
> cause filed in court.

Sullivan thus conceded that he had agreed waive any right to pursue a collective

action.

By agreement of the parties, arbitration was held in abeyance pending the

Board's consideration of the ULPs, and, on January 3, 2014, the Board issued a

8

Complaint naming PJ Cheese as the Respondent.  A Board administrative law judge ("ALJ") subsequently issued a decision and recommendation with regard to Sullivan's claims on June 6, 2014 ("the ALJ Decision").[2]  The ALJ relied on the Board's earlier decision in *D. R. Horton, Inc.,* 357 NLRB No. 184 (2012) to find that (i) the maintenance of a collective action is a substantive right under the NLRA and (ii) the collective action waiver contained in Sullivan's arbitration agreement was an unfair labor practice under the NLRA.  PJ Cheese filed exceptions with the Board.

Following the issuance of the ALJ Decision, the arbitrator requested that the parties brief the collective action waiver issue,[3] and on December 12, 2014, the arbitrator issued the Interim Order at issue in this appeal (the "Interim Order").  A copy of the Interim Order is attached to Doc. 25-1, pages 90-106.

3.  <u>The Board Issued a Decision Adopting the ALJ Decision, and PJ Cheese Petitioned the Fifth Circuit for Review of that Decision.</u>

On August 20, 2015, the Board issued its Decision and Order ("the PJ Cheese Decision") in *PJ Cheese, Inc. and James Sullivan*, Case 10-CA-11382, 362 NLRB No. 177.  In the PJ Cheese Decision, the Board reaffirmed its decision in *D. R. Horton, Inc.,* 357 NLRB No. 184[4], citing its own post-*D.R. Horton* decision in

---

[2] A copy of the ALJ's Decision is attached to Doc. 25 as Exhibit 5.
[3] Copies of the parties' briefs are attached to Doc. 25 as Exhibits 6, 7, and 8.
[4] Appellants mention this procedural aspect of the case because  *D.R. Horton, Inc. v. N.L.R.B.* relates to this appeal.

*Murphy Oil USA, Inc. v. NLRB*, 361 NLRB No. 72 (2014). However, by the time the Board issued the PJ Cheese Decision, the Fifth Circuit already had overruled the Board's determination in *D.R. Horton* that the maintenance and enforcement of a collective action waiver contained in an employment arbitration agreement violates the NLRA. *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013). Also by that time, Murphy Oil had petitioned the Fifth Circuit to review *Murphy Oil USA, Inc.,*[5] and the Fifth Circuit had denied the Board's petition for *en banc* review of Murphy Oil's petition,[6] leaving the panel decision in *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 as the law of the circuit under the prior panel decision rule. The Fifth Circuit conducted oral argument in *Murphy Oil* on August 31, 2015, and on September 23, 2015, the Board filed a motion to hold PJ Cheese's petition for review in abeyance pending the Fifth Circuit's ruling in *Murphy Oil* stating that the issue in *Murphy Oil* and *PJ Cheese, Inc. and James Sullivan* is identical (whether maintenance and enforcement of a collective action waiver violates the NLRA).[7]

4. Appellants Sought Vacatur of the Interim Award.

On January 23, 2015, Appellants applied to the district court for an order vacating the Interim Award pursuant to section 10(a)(4) of the FAA. (Doc. 25).

_____

[5] Case No. 14-60800, Doc. 00512990428.
[6] Case No. 14-60800, Doc. 00513091889, entered June 24, 2015.
[7] Case No. 15- 60610, Doc. 00513204619.

10

The district court denied the application on June 29, 2015. (Doc. 34). This appeal ensued.

### Statement of Facts

1. <u>Sullivan Agreed To Arbitrate on a Single-Claimant Basis</u>.

PJ United and PJ Cheese have adopted a Dispute Resolution Program (the "Program"). (Doc. 10, Gwarjanski Dec., Ex. 1). Sullivan twice agreed to arbitrate claims related to his employment with PJ Cheese by signing an Agreement and Receipt for Alternative Dispute Resolution Program (the "Agreement"), first on November 30, 2010 and then again on May 28, 2008. (Doc. 10, Gwarjanski Dec., Exs. 2 and 3).

In each signed Agreement, Sullivan unambiguously stated: "I also agree that any arbitration between the Company and me is of an individual claim and that any claim subject to arbitration will not be arbitrated on a multi-claimant, a collective or a class-wide basis." (Doc. 10, Gwarjanski Dec., Exs. 2,3). The Program contains the same provision. (Doc. 10, Gwarjanski Dec., Ex. 1, p. 6).

Sullivan's Complaint reflects a dispute concerning wages under the Fair Labor Standards Act ("FLSA"), which dispute arises from his employment with PJ Cheese. (Doc. 1).

11

2. The Arbitrator Issued the Interim Order.

The Interim Order acknowledges that Sullivan signed an arbitration agreement that contains the following language:

- "The Company and I agree that all legal claims or disputes covered by this Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving such claim or dispute.  I also agree that any arbitration between the Company and me is of an individual claim and that any claim subject to arbitration will not be arbitrated on a multi-claimant, a collective or a class-wide basis. … (Doc. 25-1, p. 91

- "This Agreement and the Dispute Resolution Program Booklet are the **complete agreement** of the parties on the subject of arbitration and disputes." (Doc. 25-1. p. 93) (emphasis added).

The Interim Order also recognizes that the Dispute Resolution Program Booklet contains the following language:

- "This Dispute Resolution Program is adopted for PJ United, Inc., PJ Cheese, Inc., PJ Louisiana, LLC, PJ Chippewa, LLC, PJ Utah, LLC, and Ohio Pizza Delivery Company, all of which are collectively hereinafter referred to as 'the Company.'  However, each employee understands that he/she is employed only by the particular corporation listed above that actually provides the employee's employment and the benefits thereof, and not by any other listed corporation." (Doc. 25-1, pp. 3-4);  and

- "The parties also agree that any arbitration between the employee and the Company is their individual claim and that any claim subject to arbitration will not be arbitrated on a collective or a class-wide basis; provided however, that this provision shall not apply to any prospective class or collective action based on alleged violations of wage and hour laws if, and only if, such claim should cause the agreement to arbitrate to be unenforceable under the prevailing law." (Doc. 25-1, p. 6).

12

Although not specifically quoted in the Interim Order, the Dispute Resolution Program Booklet also contains the following provision:

- "The provisions of the Program are severable and, should any provision be held unenforceable, all others will remain valid and binding. **No provision of the Program document will be held unenforceable if such provision can be reasonably interpreted in a manner that results in such provision being enforceable**." (Doc. 25-1, p. 7) (emphasis added).

The arbitrator also noted that the ALJ had determined that the collective action waiver was an unfair labor practice and that "unless and until [the ALJ Decision] is modified, that decision is entitled to be respected as the law of this case." (Doc. 25-1, p. 13).

The arbitrator did not interpret any term of the arbitration contract in the Interim Order.  Indeed, the arbitrator found that the parties had agreed "that arbitration shall not be conducted on a collective basis" and that the collective waiver is part of the parties' "complete agreement."   Nonetheless, the arbitrator determined that:

> Section 2 of the Federal Arbitration Act provides that a contract to arbitrate a future dispute 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  Contract law is, of course, a matter of state law. Alabama law clearly provides that a contract to commit an illegal act [here, an unfair labor practice] should not be enforced as written but rather should be reformed.  Given the illegal nature of the prohibition against collective actions set out in the Arbitration Agreements signed by Claimant and Douglas Stephens in 2008 and 2010 and the Dispute Resolution Program Booklet, the Arbitrator must **excise** it.  Thus it is proper to read those Agreements and the Booklet as authorizing an employee to pursue an FLSA claim as a collective action.

13

(Doc. 25-1, p. 14) (emphasis added). The arbitration agreement does not empower the arbitrator to reform the arbitration agreement and coerce collective arbitration where the parties specifically agreed not to arbitrate collectively.

The arbitrator concluded that enforcement of the collective action waiver would "ignore[] completely the rationale underlying collective actions, i.e. amassing a claim large enough to warrant prosecution." *Id.* at 15.

### 3. The District Court Found the Arbitrator had Analyzed the Agreement Under His Interpretation of Applicable Law, and Not With Regard to the Parties' Contractual Intentions and Expectations.

The district court denied Appellants' motion to vacate the Interim Order by Order entered June 29, 2015 ("the Appealed Order"). (Doc. 34). The Appealed Order contains both findings of facts and conclusions of law.

The district court found that when PJ United and Stephens initially moved the district court to stay the trial of the action, they cited "a collective action waiver provision in the arbitration {sic} wherein both parties agreed to arbitrate only on an individual basis." (Doc. 34, p. 1). The district court did not make any finding that Sullivan had questioned the interpretation of the collective action waiver clause or that the parties had asked the arbitrator to interpret the arbitration agreement to determine whether they had intended to waive or agree to collective arbitration.

The district court also found that Sullivan challenged only the legality of "Defendants' collective action waiver" under the NLRA. The district court did not

14

make any finding that there had been any issue or dispute as to whether the parties had contractually agreed that any arbitration arising out of Sullivan's employment with any of the appellants would proceed on a single-claimant basis. Indeed the district court had previously found that the arbitration agreement contains a collective action waiver, that "[t]he only source of disagreement is whether the provision barring any collective action is a matter for this Court or a matter for the arbitrator", and that arbitration was the appropriate forum to enforce the agreement. (Doc. 21, pp. 2, 6).

The district court also found that the arbitrator had determined that the parties' contract contained a collective action waiver, but that the arbitrator had excised the waiver from the contract.

The district court further found:

> [The arbitrator] also noted that the statement in PJ United's Dispute Resolution Program Booklet, which states that in arbitration an individual's "rights are protected," would be violated if the arbitrator *enforced* the collective action waiver provision, because the NLRB [in *D. R. Horton, Inc.,* 357 NLRB No. 184] determined that employees had a right to collective action on FLSA claims. Therefore, the arbitrator determined that the present arbitration would be allowed to proceed as a collective action.

(Doc. 34, p. 3) (emphasis added). In making this finding, although the district court pointed to footnote five in the Interim Order, it omitted the following critical language the arbitrator wrote in footnote five:

15

> Arbitration does protect an employee's substantive rights. However, whether legally waiveable or not, an employee's ability to participate in an FLSA collective action is a right nonetheless. ***Enforcing*** a waiver of that right does protect it.

(Doc. 25-1, p. 12) (emphasis added). Nothing in footnote five addresses contract interpretation, and footnote five (like the rest of the Interim Order) contains no finding that the parties agreed to collective arbitration. In fact, footnote five makes clear that the arbitrator found that the parties agreed to the collective action waiver by the statement "If the arbitrator were to **enforce** the collective action waiver in this case …" (Doc. 25-1, p. 12).

Without determining that the NLRB's decision equates to a congressional command to override the Federal Arbitration Act, the district court found that "in this case the arbitrator did construe the language of the contract to determine that class arbitration **was allowed**" (not contractually agreed to by the parties) and that "the arbitrator … read the agreement, **under his interpretation of the applicable law**, as **allowing for** class arbitration." (Doc. 34, p. 6) (emphasis added). The district court did not find that the arbitrator construed the parties' contractual intent and determined that the parties **had agreed** to collective arbitration in the agreement itself.

With regard to conclusions of law, the district court did not conclude that the arbitrator had enforced the arbitration agreement according to its terms, and the district court did not order that the arbitration must be enforced according to the

16

parties' clear and mutual agreement or "proceed in the manner provided for in [the] agreement."[8]  Rather, the district court concluded that "[t]he arbitrator was at the very least arguably interpreting the parties' contract when he determined that class arbitration was **permitted"** – not intended.  (Doc. 34, p. 7).

## Standard of Review

This panel is bound by a prior panel decision of this Court.  *United States v. Vega–Castillo,* 540 F.3d 1235 (11th Cir. 2008).

When reviewing an order denying an application to vacate an arbitration award, this Court reviews the district court's findings of fact for clear error and its legal conclusions *de novo.  Frazier v. CitiFinancial Corp., LLC,* 604 F.3d 1313, 1321 (11th Cir. 2010).

## Summary of the Argument

This is not an arbitration clause construction case; there is no claim or finding that the parties contractually agreed to arbitrate collectively.  Rather, this is a failure-to-enforce case.

The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms.  An arbitrator has two roles: (1)to interpret the agreement (if asked);  and (2) to enforce the parties' intended agreement.  If the parties do not ask an arbitrator to interpret their agreement, the

---

[8] 9 U.S.C. § 4.

arbitrator's sole task is to enforce it.  An arbitrator's role is not to assess the legality of the parties' agreement and to reform the agreement as he sees fit.  This is so because arbitration is a matter of consent, not coercion; courts and arbitrators must give effect to the contractual rights and expectations of the parties.  As a result, a party may not be compelled to arbitrate collectively unless there is a contractual basis for concluding that the parties agreed to do so.

Here, the parties agree that they contractually agreed to the collective action waiver.  The parties did not ask the arbitrator to interpret their contractual intent with regard to the waiver. Rather, Sullivan wrongly asked that the arbitrator not enforce the waiver so Sullivan could extricate himself from a portion of the agreement he had made.

But the arbitrator found, as he must have, that the parties agreed to the collective action waiver.  This left the arbitrator with a single task: to enforce the agreement as written.  Instead of doing so, the arbitrator ordered the parties to proceed with collective action proceedings, in part because collective actions allow the "amassing [of] a claim large enough to warrant prosecution" and because "[a]s anyone familiar with judicial and arbitral process in this country is well aware, there is no substitute for quality representation and quality representation is not free."  By refusing to enforce the undisputed collective action waiver and by imposing collective action proceedings upon Appellants when there is no

18

contractual basis for collective action proceedings, the arbitrator exceeded his authority.

The district court found, as it must have, that the arbitration agreement contained a collective action waiver, but then erred as a matter of law by failing to vacate the Interim Order to ensure enforcement of the parties' undisputed agreement.

Even if the parties could be deemed to have asked the arbitrator to interpret their contractual intent with regard to collective arbitration, the district court clearly erred by failing to vacate the Interim Order because the arbitrator found that collective arbitration is permitted—not that the parties agreed **in the contract** to collectively arbitrate.

The district court's order denying vacatur of the Interim Order must be reversed, the Interim Order must be vacated, and Sullivan must be ordered to proceed to individual arbitration

## Argument

I.    The Waiver Must be Enforced Under Prior Panel Precedent.

This circuit has consistently enforced FLSA collective action waivers in employment arbitration contracts. In *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1330 (11th Cir.), *cert. denied*, 134 S. Ct. 2886, 189 L. Ed. 2d 836 (2014), this Court was presented with a single issue: "whether an arbitration

agreement, which waives an employee's ability to bring a collective action under the Fair Labor Standards Act, is enforceable under the Federal Arbitration Act." *Id.* at 1326.

The parties in *Chipio* did not dispute that the employees' FLSA claims against the employer fell within the scope of arbitration agreements into which the parties had entered or that the employees had explicitly waived any rights to collective arbitration. Under these undisputed facts, the Court ruled that "[t]he FAA, standing alone, requires enforcement of the Arbitration Agreements according to their terms, which, in this case, means individual, not collective, arbitration." *Id.* at 1330. The Court then determined that it must find a "contrary congressional command in the FLSA to override the FAA." *Id.* at 1330. Finding no such congressional command in the FLSA, the Court effectively enforced the collective action waiver and ordered individual arbitration. *Id.* at 1337.

Here, as in *Chipio*, the parties have never disputed the facts that (i) Sullivan's FLSA claim falls within the scope of the arbitration agreement, and (ii) the arbitration agreement contains an explicit collective action waiver. Also as in *Chipio*, neither the arbitrator nor the district court found that "a congressional command in the FLSA override[s] the FAA." Because the arbitrator did not find an overriding congressional command, this appeal does not involve a misapplication of the law. Accordingly, this Court's prior panel precedent

20

mandates reversal of district court's order, vacatur of the Interim Order, and enforcement of the parties' agreement to arbitrate individually. *See United States v. Vega–Castillo,* 540 F.3d 1235, 1236 (11th Cir. 2008) ("[W]e are bound to follow a prior binding precedent 'unless and until it is overruled by this court *en banc* or by the Supreme Court.'").

To the extent Sullivan would argue that the NLRA contains a congressional command that overrides the FAA, Appellants adopt by reference the Fifth Circuit's analysis and conclusions set forth in *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013). To the extent that Sullivan would argue that the Board's Decision in *PJ Cheese, Inc. and James Sullivan, Case 10-CA-11382*, 362 NLRB No. 177, implicitly or explicitly acts as a congressional command that overrides the FAA, Appellants note that neither the arbitrator nor the district court reached such a legal conclusion. Finally, Appellants note that the Board's Decision is not self-enforcing[9] and that neither Sullivan nor the Board has sought enforcement of the Decision in any venue.

---

[9]In most instances, federal court jurisdiction under the NLRA is limited to the courts of appeals which have appellate jurisdiction over NLRB decisions for the purposes of review and enforcement. 29 U.S.C. § 160(e) (1982). *See also Whitney v. Chicago Transit Auth.*, No. 87-C-1082, 1987 WL 11852 (N.D. Ill. June 3, 1987). In other words, to the extent the arbitrator sat as a United States district court judge, the arbitrator was not empowered to review, pass judgment on, or enforce the ALJ Decision. Recognizing his lack of jurisdiction, the arbitrator expressly stated in the Interim Order that he was not enforcing the ALJ Decision. (Doc. 25-1 p. 14).

21

II.    <u>An Arbitrator Performs Only Two Functions: Interpreting the Contract (if Asked); and Enforcing the Contract in a Manner Consistent with the Parties' Intent.</u>

Even if the prior panel's decision in *Chipio* did not mandate reversal and vacatur, the United States Supreme Court issued a decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681-87, 130 S. Ct. 1758, 1773-76, 176 L. Ed. 2d 605 (2010) which controls this appeal. In *Stolt-Nielsen*, the Court addressed a refusal of a lower court to vacate an arbitrators' order that an arbitration could proceed on a class basis where the parties had stipulated that they had reached no agreement on the issue. Noting that "the task of an arbitrator is to interpret and enforce a contract," the Court ruled that "[t]his stipulation **left no room for an inquiry regarding the parties' intent**, and **any inquiry into that settled question would have been outside the panel's assigned task**." *Id.* at 676, 130 S. Ct. at 1770, 176 L. Ed. 2d 605 (emphasis added). The *Stolt-Nielsen* Court also wrote:

> While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration "is a matter of consent, not coercion,"

> In 1925, Congress enacted the United States Arbitration Act, as the FAA was formerly known, for the express purpose of making "valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." The FAA provides, in pertinent part, that a "written provision in any maritime transaction" calling for the arbitration of a controversy arising out of

22

such transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," Under the FAA, a party to an arbitration agreement may petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." Consistent with these provisions, we have said on numerous occasions that the central or "primary" purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms."

Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must "give effect to the contractual rights and expectations of the parties." In this endeavor, "as with any other contract, the parties' intentions control." This is because an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.

Underscoring the consensual nature of private dispute resolution, we have held that parties are generally free to structure their arbitration agreements as they see fit. For example, we have held that parties may agree to limit the issues they choose to arbitrate, and may agree on rules under which any arbitration will proceed. They may choose who will resolve specific disputes.

We think it is also clear from our precedents and the contractual nature of arbitration that parties may specify with whom they choose to arbitrate their disputes. It falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties.

From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. In this case, however, the arbitration panel imposed class arbitration even though the parties concurred that they had reached "no agreement" on that issue. The critical point, in the view of the arbitration panel, was that petitioners did not "establish that the parties to the charter agreements intended to preclude class arbitration." Even though the

23

parties are sophisticated business entities, even though there is no tradition of class arbitration under maritime law, and even though AnimalFeeds does not dispute that it is customary for the shipper to choose the charter party that is used for a particular shipment, the panel regarded the agreement's silence on the question of class arbitration as dispositive. The panel's conclusion is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent.

In certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement. Thus, we have said that "procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." This recognition is grounded in the background principle that "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."

An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator. In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration.

Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands

24

of parties. The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well. And the commercial stakes of class-action arbitration are comparable to those of class-action litigation even though the scope of judicial review is much more limited. We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.

The dissent minimizes these crucial differences by characterizing the question before the arbitrators as being merely what "procedural mode" was available to present AnimalFeeds' claims. If the question were that simple, there would be no need to consider the parties' intent with respect to class arbitration. But the FAA requires more. Contrary to the dissent, but consistent with our precedents emphasizing the consensual basis of arbitration, we see the question as being whether the parties agreed to authorize class arbitration. Here, where the parties stipulated that there was "no agreement" on this question, it follows that the parties cannot be compelled to submit their dispute to class arbitration.

*Id.* at 681-87, 130 S. Ct. at 1773-76, 176 L. Ed. 2d 605 (internal citations omitted).

A. The Parties' Express Agreement to the Collective Action Waiver Rendered Interpretation of that Waiver Outside the Arbitrator's Assigned Task.

Sullivan's concession that the arbitration agreement contains a collective action waiver, made evident by his challenging the waiver as an unfair labor practice, left no room for inquiry regarding the parties' intent to waive collective action. As a result, the only task for the arbitrator was to enforce the waiver. In excising the parties' undisputed agreement and then imposing on the parties the

exact process that the parties agreed not to engage in, the arbitrator exceeded his authority, which authority derives only from the parties' agreement.

Moreover, Sullivan has never claimed that the arbitration agreement does not contain a collective action waiver; he simply claims that the waiver is unlawful (under an overturned ruling by the Board) and that it should not be enforced. Prior to the selection of the arbitrator, the district court found that the arbitration contains a collective action waiver and that "the only source of disagreement" was whether enforcement of that agreement was a matter for the court or an arbitrator. The parties never asked the arbitrator to determine whether they agreed to waive collective arbitration. In their arbitration demand, Appellants asked the arbitrator to enforce the waiver, and Sullivan subsequently asked the court not to enforce it. Under these facts, any inquiry into that settled question was outside the arbitrator's assigned task; all that was left for the arbitrator was to enforce the agreement.

B. The Arbitrator Exceeded his Authority by Failing to Enforce the Clear and Mutual Collective Action Waiver.

By failing to enforce the undisputed collective action waiver, the arbitrator exceeded his authority, and he did so for two apparent reasons: (1) his belief, as expressed in footnote 5, that arbitration protects an employee's substantive rights and that parties cannot agree to waive rights through an arbitration agreement; and (2) his personal conviction that people should be able to "amass[] a claim large

enough to warrant prosecution" regardless of their agreement not to do so. This is industrial justice.

C. The District Court Clearly Erred in Making Factual Findings, Failing to Vacate the Interim Award, and Failing to Order Arbitration to Proceed on a Single-Claimant Basis.

The district court's factual finding that the arbitrator arguably interpreted the parties' contract is clearly erroneous. The arbitrator did not interpret the contract; he found that the parties had agreed to the collective action waiver. But the arbitrator did not like that agreement, as it would limit Sullivan's ability to amass a large claim, so he struck the waiver and then ordered collective arbitration without pointing to any contractual basis for finding that that is what the parties intended.

The district court erred as a matter of law 1) by failing to recognize that the parties did not and do not claim that the waiver clause was in need of interpretation, 2) by failing to realize that the issue of contract interpretation (as opposed to enforcement) was not even presented to the arbitrator such that the "any inquiry into that settled question [was] outside the [arbitrator's] assigned task," and 3) by failing to determine that the arbitrator exceeded his authority when he refused to enforce the parties' agreement as the parties agreed and coerced the Appellants to arbitrate collectively when there is no factual dispute that Sullivan and the Appellants agreed not to do so. Because there is no factual dispute that the parties agreed to the collective action waiver provision, the district court's order

27

denying the Appellants' motion to vacate the Interim Order is due to be reversed and the Interim Order is due to be vacated.

D. "Excising" the Collective Action Waiver Would Result in no Agreement with Regard to Collective Arbitration, thereby Precluding Collective Arbitration as a Matter of Law.

Even if the arbitrator had the authority to change the parties' undisputed agreement by excising the collective action waiver (which he did not, and the district court points to nothing in the arbitration agreement that would give the arbitrator such authority), the obvious result would be that the contract contained no agreement, or was "silent," in that regard. If that were the result, then under *Stolt-Nielsen* an agreement to arbitrate could not be read into the agreement. If that is the case, then the arbitrator exceeded his authority in finding an extra-contractual way to order collective arbitration, and the district court erred in refusing to vacate the Interim Order.

III.    The FAA Trumps Alabama Contract Law.

In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), the Supreme Court addressed the issue of whether state law could condition the enforceability of arbitration agreements on the availability of class arbitration. In that case, the plaintiffs had entered into a sales and servicing agreement with AT&T Mobility, which agreement included an arbitration clause that required arbitration in the parties' "individual capacity, and not as a plaintiff or

28

class member in any purported class or representative proceeding." *Conception*, 131 S. Ct. at 1744. Noting the FAA's language that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," recognizing the "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract," and affirming the Supreme Court precedent that arbitration contracts should be "enforced according to their terms," the *Conception* Court held that a state-law limitation to the plain arbitration agreement was pre-empted by the FAA. *Id.* at 1745-1746, 1753. In doing so, the Court recognized that the save-on-such-grounds language of the FAA is a saving clause that "preserves generally applicable contract defense" such as fraud and duress, but that "**nothing in the [saving clause] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives**. … In other words, the act cannot be held to destroy itself." *Id.* at 1748 (internal citations omitted, emphasis added.)

The *Conception* Court noted that the overarching purpose of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings" and that "[r]equiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* The Court cited several

29

examples of the material difference between bilateral and class arbitration which demonstrate that a clear agreement to class arbitration is a prerequisite to the enforcement of class arbitration.

> [T]he switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.  In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. But before an arbitrator may decide the merits of a claim in classwide procedures, he must first decide, for example, whether the class itself may be certified, whether the named parties are sufficiently representative and typical, and how discovery for the class should be conducted.
>
> …
>
> [C]lass arbitration greatly increases risks to defendants. Informal procedures do of course have a cost: the absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims. Other courts have noted the risk of 'in terrorem' settlements that class actions entail, and class arbitration would be no different.
>
> Arbitration is poorly suited to the higher stakes of class litigation. In litigation, a defendant may appeal a certification decision on an interlocutory basis and, if unsuccessful, may appeal from a final judgment as well. Questions of law are reviewed de novo and questions of fact for clear error. In contrast, 9 U.S.C. § 10 allows a court to vacate an arbitral award only where the award 'was procured

30

by corruption, fraud, or undue means'; 'there was evident partiality or corruption in the arbitrators'; 'the arbitrators were guilty of misconduct in refusing to postpone the hearing ... or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced'; or if the 'arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award ... was not made.' The AAA rules do authorize judicial review of certification decisions, but this review is unlikely to have much effect given these limitations; review under § 10 focuses on misconduct rather than mistake. And parties may not contractually expand the grounds or nature of judicial review. **We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.**

*Conception*, 131 S. Ct. at 1751-52 (internal citations and quotations omitted) (emphasis added).

Since *Conception* was decided, this circuit has applied it in a "straightforward" manner and refused to allow the operation of a state law (statutory or common) to frustrate the FAA or to allow state laws to impede the enforcement of arbitration agreements. *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 (11th Cir. 2012).

In failing to enforce the FAA's mandate that arbitration contracts be enforced according to their terms, the district court erred as a matter of law.

IV.   The Agreement Required the Arbitrator to Enforce the Waiver if there is Any Reasonable Way to do so.

Sullivan and Appellants limited the arbitrator's powers by agreeing that no provision of the agreement would be held unenforceable if that provision could "be

31

reasonably interpreted in a manner that result[ed] in such provision being enforceable." Because the collective waiver could reasonably be interpreted in a manner that results in the waiver being enforceable under the FAA and the decisions of the United States Supreme Court, this circuit, and the Fifth Circuit as noted above, the arbitrator exceeded the authority conferred on him by the parties when he refused to enforce the undisputed collective action waiver because the waive could reasonably be interpreted as enforceable under the undisputed facts and applicable, indeed controlling, law.

## Conclusion

This Court must vacate the Interim Order, order Sullivan to arbitrate on a single-claimant, non-collective basis, and enjoin Sullivan from pursuing the collective treatment of his FLSA claim for the reasons stated herein, including: (1) the parties empowered the arbitrator to hear only Sullivan's individual claim; (2) the parties required the arbitrator to enforce the contractual provisions if such provisions reasonably could be interpreted as being enforceable; (3) the collective action waiver can reasonably be interpreted as being enforceable under *Chipio*; (4) the Fifth Circuit's decision in *D. R. Horton* (along with the law of every circuit that has addressed the FLSA collective action waiver issue), United States Supreme Court precedent, and the FAA and FLSA themselves call for enforcement of the collective action waiver; (5) in any event there is no claim or finding that the

32

parties affirmatively agreed to arbitrate collectively; (6) the FAA preempts Alabama contract law to the extent Alabama contract law would prevent the enforcement of the parties' clear arbitration agreement. Finally, and dispositively, the district court's order must be reversed and individual arbitration must be ordered under precedent established by a prior panel of this Court because as a matter of law, no congressional command overrides the FAA under the facts and circumstances of this case.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains no more than 8,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 10* in *Times New Roman Font, Type 14.*

33

### CERTIFICATE OF SERVICE

I hereby certify that on this the 28th day September, 2015, I served a copy of the foregoing on counsel of record by notice of electronic filing on those who are registered participants in the electronic filing system as follows:

W. Lewis Garrison, Jr.
William L. Bross
Brandy Robertson
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, AL 35203
wlgarrison@hdglawfirm.com
wlbross@hdglawfirm.com
taylor@hdglawfirm.com
brandy@hdglawfirm.com

Richard M. Paul III
Paul McInnes LLP
2000 Baltimore, Suite 100
Kansas City, MO 64108


Mark A. Potashnick
Weinhaus & Potashnick
150 Olive Blvd., Suite 133
St. Louis, MO 63141


_____
/s/ William K. Hancock

34